Filed 8/25/22  In re S.F. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION THREE

| | |
|---|---|
| In re S.F. et al., Persons Coming Under the Juvenile Court Law. | B318021 |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>I.F.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP03034A–C) |

APPEAL from orders of the Superior Court of Los Angeles County, Steff R. Padilla, Commissioner.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel for Plaintiff and Respondent.

I.F. (mother) appeals from juvenile court orders terminating her parental rights to her children under Welfare and Institutions Code[1] section 366.26. Mother's sole contention[2] is the juvenile court erred by finding that the Los Angeles County Department of Children and Family Services (DCFS) adequately investigated the children's possible Indian ancestry, as required by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related state statutes. We affirm the orders.

## BACKGROUND

Mother has three children: S.F. (born August 2013), J.R. (born February 2017), and J. (born June 2018). Jonathan G. is S.F.'s alleged father. Arthur R. is J.R.'s father. And Fernando V. is J.'s father.

In May 2018, DCFS filed a petition under section 300 as to S.F. and J.R. alleging that mother's use of methamphetamine rendered her incapable of caring for them and placed them at risk of serious physical harm. ICWA-010 forms attached to the

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother states in her opening brief that she also appeals from orders denying her section 388 petitions but does not otherwise address the petitions. Any issue as to the petitions is therefore forfeited. (See generally *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [failure to support a point with reasoned argument and citations to authority forfeits issue]; see Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority."].)

petition stated that ICWA inquiries had been made as to both children. And, according to the May 2018 detention report, mother told a social worker that she did not have Indian ancestry. On May 14, 2018, mother filled out ICWA-020 forms for S.F. and J.R. stating mother had no Indian ancestry as far as mother knew. That same day, the juvenile court held a detention hearing at which it found there was no reason to know that S.F. and J.R. were Indian children.

A month after S.F. and J.R. were detained, J. was born in June 2018, and a dependency petition was filed as to her. In addition to allegations against mother, the petition alleged that J.'s father, Fernando, had a history of drug-related convictions. At the June 11, 2018 detention hearing, the trial court found there was no reason to know J. was an Indian child, noting that mother and Fernando had signed ICWA-020 forms that day for J., each stating they had no Indian ancestry as far as they knew. On June 21, 2018, mother again denied having any Indian ancestry in her family.

In August 2018, the petitions were sustained.[3] Only mother and Fernando (J.'s father) were granted reunification services.

S.F.'s alleged father Jonathan never filled out an ICWA-020 form. He never appeared in the action and his whereabouts remained unknown throughout the proceedings, despite DCFS's efforts to locate him.

J.R.'s presumed father, Arthur, signed an ICWA-020 form on April 22, 2019, stating he had no Indian ancestry as far as he

---

[3] Amended petitions were later filed and sustained as to all children.

3

knew.  The juvenile court again found that ICWA did not apply to J.R..

The juvenile court terminated reunification services in December 2019.  In January 2020, the juvenile court terminated parental rights to all three children and identified adoption as the permanent plan for them.[4]

## DISCUSSION

Mother identifies three extended family members with whom DCFS had contact and of whom she argues DCFS should have inquired as to the children's possible Indian ancestry:  the children's maternal grandmother and J.R.'s paternal grandmother and paternal aunt.

I.      Legal standards

A.      *ICWA*

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.)

"Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*In re Michael V.* (2016) 3

---

[4]      The children had been placed together with a prospective adoptive family with whom they had bonded.

4

Cal.App.5th 225, 233; see also *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).) An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].)

The affirmative duty to inquire has several elements. If a child is removed from his or her parents and placed in the custody of a county welfare department, the department must inquire whether a child is an Indian child. Such inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) The court also must make an ICWA inquiry when the parents first appear in court: The court "shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)), and must require each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status (Cal. Rules of Court, rule 5.481(a)(2)(C)).

If the court or social worker has "reason to believe that an Indian child is involved in a proceeding," the court or social worker must "make further inquiry regarding the possible Indian status of the child" by, among other things, interviewing the parents and extended family members, and contacting any tribe that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2,

5

subd. (e)(2).) There is "reason to believe" a child involved in a proceeding is an Indian child whenever the court or social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

If the agency's inquiry creates a "reason to know" that an Indian child is involved, notice of the proceedings must be provided to the parent, legal guardian, or Indian custodian and the child's tribe. (§ 224.2, subd. (f).) There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).) Thereafter, the court shall confirm that the agency used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership. (§ 224.2, subd. (g).) A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe "shall be conclusive." (§ 224.2, subd. (h).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child," the court may make a finding that ICWA does not apply to the proceedings, "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).)

B.      *Standard of review*

As noted above, section 224.2, subdivision (i)(2), sets out two statutory predicates to a juvenile court's finding that ICWA does not apply.  First, the court must determine whether there is "reason to know" whether the child is an Indian child.  Second, the court must decide whether a "proper and adequate further inquiry and due diligence as required in this section have been conducted."  If the court finds an adequate inquiry has been conducted and there is no reason to know a child is an Indian child, the court may make a finding that ICWA does not apply to the proceedings.  (§ 224.2, subd. (i)(2).)

The first element—whether there is reason to know whether the child is an Indian child—requires the juvenile court to determine, based on the evidence before it, whether any one of six statutory criteria is met—e.g., (1) the court has been advised that the child "is an Indian child," (2) the child or parent resides on a reservation, (3) any participant in the proceeding informs the court that it has discovered information indicating the child is an Indian child, (4) the child gives the court reason to know that he or she is an Indian child, (5) the child is or has been a ward of a tribal court, or (6) either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.  (§ 224.2, subd. (d).)  If none of these six factors is met, the court must make a finding that there is no reason to know the child is an Indian child.  Because this determination is fundamentally factual, we review it for substantial evidence.  (*In re Ezequiel G.* (July 29, 2022, B314432) __ Cal.App.5th __ [2022 WL 3009914, *4] (*Ezequiel G.*); *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re D.F.* (2020) 55 Cal.App.5th 558, 565; but see *In re I.F.* (2022) 77 Cal.App.5th 152, 163 [independently

7

reviewing whether ICWA's requirements satisfied where facts undisputed].)  In other words, we " 'should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts," ' but should uphold the lower court's determinations ' "if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' " (*Ezequiel G.*, 2022 WL 3009914, at *7]; *In re J.N.* (2021) 62 Cal.App.5th 767, 774; *In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

The second element—whether a "proper and adequate further inquiry and due diligence as required in this section have been conducted"—is somewhat different.  Deciding whether an inquiry was "adequate" and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts.  Instead, it requires the court to "engage in a delicate balancing" (*In re Caden C.* (2021) 11 Cal.5th 614, 640) to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case. In short, the statute directs the juvenile court to perform a quintessentially discretionary function, and thus we review it for abuse of discretion.  (*Ezequiel G.*, *supra*, 2022 WL 3009914, at *6–*7.)

If we conclude that the trial court erred in finding that an adequate ICWA inquiry was conducted, we will return the case to the juvenile court only if the error was prejudicial—that is, if "the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding."  (*In re Dezi C.* (2022) 79

8

Cal.App.5th 769, 779.)  This test is "outcome focused," asking whether "it is reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that is, the outcome) of the juvenile court's ICWA finding," and remanding only in those cases "in which the record gives the reviewing court a reason to believe that the remand may undermine the juvenile court's ICWA finding." (*Id.* at pp. 781–782.)

II.     The trial court did not prejudicially err in finding that the children are not Indian children and ICWA does not apply to this case.

Mother, Fernando, and Arthur denied Indian ancestry below.[5]  Mother nonetheless contends on appeal that DCFS's failure to make an ICWA inquiry of maternal grandmother and J.R.'s paternal grandmother and paternal aunt was reversible error.  We disagree.

---

[5]     Although mother mentions Jonathan in her factual statement, she does not thereafter discuss him and makes no specific ICWA claim about him.  Jonathan was merely an alleged father, he was not on S.F.'s birth certificate, he had no contact with S.F. since her birth, DCFS unsuccessfully searched for him, the record contains no information about Jonathan's family history, and he never appeared in the proceedings.  Because mother makes no specific argument about Jonathan, including discussing what implication his alleged father status might have on an ICWA inquiry, we do not address any issue as to him.  (See generally 25 U.S.C. § 1903(9) [under ICWA, "parent" does not include unwed father whose paternity not acknowledged or established]; *In re Daniel M.* (2003) 110 Cal.App.4th 703, 707–709 [alleged father had no standing to challenge alleged ICWA notice violations].)

9

As to the first element of the ICWA finding, substantial evidence supported the juvenile court's finding that there is no reason to know the children are Indian children. DCFS made an initial ICWA inquiry before filing the petition as to S.F. and J.R., and it attached to the petition an ICWA-010 form attesting that an Indian child inquiry had been made of mother. The detention report clarified that mother had denied Indian ancestry. Subsequently, mother signed three ICWA-020 forms, one as to each child, stating under penalty of perjury she did not have Indian ancestry. In June 2018, mother repeated, presumably to a social worker, that she did not have Indian ancestry. Arthur and Fernando also signed ICWA-020 forms stating under penalty of perjury that they did not have Indian ancestry. At no point— including now, on appeal—has mother suggested her and the two fathers' responses were inaccurate. No member of mother's, Arthur's, or Fernando's extended families has ever told DCFS that the children have Indian ancestry. (But see *In re J.C.* (2022) 77 Cal.App.5th 70, 79 [welfare agency's failure to make ICWA inquiry of extended relatives violated § 224.2, subd. (b)]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 [§ 224.2, subd. (b), requires DCFS to inquire of child's extended family members].) Accordingly, all the evidence before the juvenile court required the conclusion that there was no reason to know the children are Indian children.

As to the second element of the ICWA finding, the juvenile court did not abuse its discretion in concluding that DCFS conducted an adequate inquiry. In reviewing a juvenile court's ICWA findings for abuse of discretion, the key question for a reviewing court is whether the ICWA investigation has reliably answered the question at the heart of the ICWA inquiry:

Whether a child involved in a proceeding "is or may be an Indian child" (§ 224.2, subd. (a))—that is, whether he or she either (a) "is a member of an Indian tribe" or (b) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 U.S.C. § 1903, subd. (4); see also § 224.1, subds. (a)–(b)). In other words, the focus of the court's analysis is not on the number of individuals interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation. (*Ezequiel G.*, *supra,* 2022 WL 3009914, at \*9.)

As we recently explained, " 'ICWA does not apply simply based on a child or parent's Indian ancestry.' " (*Ezequiel G.*, *supra*, 2022 WL 3009914, at \*9, citing U.S. Dept. of Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) (BIA Guidelines).) Instead, the definition of "Indian child" is "based on the child's *political ties* to a federally recognized Indian Tribe, either by virtue of the child's own citizenship in the Tribe, or through a biological parent's citizenship and the child's eligibility for citizenship." (Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38795 (June 14, 2016) (BIA ICWA Proceedings), italics added.) In other words, an Indian child is one with a *tribal affiliation*, not merely Indian ancestry.

"Tribal citizenship (aka Tribal membership) is voluntary and typically requires an *affirmative act* by the enrollee or her parent." (BIA ICWA Proceedings, *supra*, 81 Fed.Reg. at p. 38783.) Specifically, "Tribal laws generally include provisions requiring the parent or legal guardian of a minor *to apply for* Tribal citizenship on behalf of the child. [Citation.] Tribes also often require an affirmative act by the individual seeking to

11

become a Tribal citizen, such as the filing of an application. [Citation.] As ICWA is limited to children who are either enrolled in a Tribe or are eligible for enrollment and have a parent who is an enrolled member, *that status inherently demonstrates an ongoing Tribal affiliation.*" (*Ibid.*, italics added; see also BIA Guidelines, *supra*, at p. 10 ["Most Tribes require that individuals apply for citizenship and demonstrate how they meet that Tribe's membership criteria."].) Because membership in an Indian tribe therefore requires that an individual or his or her parent *apply* for tribal membership, a child's parents will, in most cases, be the most reliable source of information for determining whether a child is an Indian child.

In the present case, nothing in the record gives us reason to doubt the accuracy of mother's and the two fathers' denials of a tribal affiliation. Mother lived with her biological parents growing up and said she was close to maternal grandmother, whom at one point mother wanted to care for the children. In view of mother's relationship with maternal grandmother, the possibility that mother might unknowingly be a member of tribe appears trivially small. The record also shows that Arthur and Fernando had contact with their biological relatives.[6] Arthur's mother (J.R.'s paternal grandmother) visited the children. Fernando, although incarcerated for some of the juvenile court proceedings, remained in contact with family members. Notably, mother names no extended family member of Fernando's that she claims DCFS should have interviewed. Although the record does

---

[6] This is so even though, in 2003, when Arthur was 15 years old, a dependency petition was sustained as to him, and he did not reunify with his parents.

not show that DCFS asked family members about possible Indian ancestry, the chance that these fathers were unknowingly tribal members also is remote. (Compare *In re Y.W.* (2021) 70 Cal.App.5th 542, 548 [mother was adopted and had no information about biological relatives]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740, 745 [father never appeared, and mother had no reason to know father's ancestry]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 [parent growing up in foster care may be unaware of cultural heritage].)

Further, at no time did mother, Arthur, or Fernando or their attorneys object or indicate that the information was incorrect or that their clients were unsure about their ancestry. (See Super. Ct. L.A. County, Local Rules, rule 7.17(a) ["An attorney representing a client in dependency court shall affirmatively inquire of their client as to whether the client has reason to believe that any child appearing in the dependency court has Indian heritage under the ICWA. Every effort should be made by counsel to assist confirmation of a child's Indian status and tribal membership."] The juvenile court therefore did not abuse its discretion by concluding that DCFS conducted an adequate ICWA inquiry as to mother, Arthur, and Fernando.

For all the same reasons, even if the juvenile court erred by finding DCFS's inquiry adequate, it is not reasonably probable that any error in not "conducting a proper initial inquiry affected the correctness (that is, the outcome) of the juvenile court's ICWA finding." (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 781.) Nothing in the juvenile court record gives us a reason to doubt the accuracy of mother's, Arthur's, and Fernando's denials that they or the children were members of or eligible for membership in an Indian tribe, and mother has not made a proffer on appeal

13

that she or the two fathers have Indian heritage.  No remand therefore is warranted.

## DISPOSITION

The orders terminating parental rights are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORT**

EDMON, P. J.

I concur:

EGERTON, J.

14

LAVIN, J., Dissenting:

For the reasons set forth in my dissent in *In re Ezequiel G.* (July 29, 2022, B314432) ___Cal.App.5th___ [2022 WL 3009914], I would conditionally affirm the orders and remand for further proceedings.


LAVIN, J.

1